IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

KRISTIE RICHARDSON, an individual,

     Plaintiff.

     v.

CHILDRENS HOSPITAL COLORADO, a Colorado nonprofit corporation,

     Defendant.

_____

## COMPLAINT AND REQUEST FOR JURY TRIAL
_____

Plaintiff, Kristie Richardson, through her attorneys, Steven L. Murray of Murray Law, LLC, and Thomas H. Mitchiner of Mitchiner Law, LLC, submits her Complaint and Request for Jury Trial against Defendant Children's Hospital Colorado.

## <u>Introduction</u>

This action is an employment discrimination, retaliation, interference, threat, and intimidation case, under the Americans with Disabilities Act of 1990, *as amended*, 42 U.S.C. Section 12101, *et. seq*. The Defendant intentionally and willfully discriminated against Ms. Richardson based on her disability, retaliated against her for participating in lawfully protected activity, and intimidated, threatened, and interfered with her exercise of rights under the ADA.

## I.  PARTIES

1.      Ms. Richardson is a disabled female, United States citizen and resident of Arizona.

2.      At the time of the events in issue, Ms. Richardson resided in Aurora, Colorado.

3.      Defendant Children's Hospital Colorado is nonprofit healthcare institution.

4.      Defendant's primary place of business is 13123 East 16th Avenue, Aurora, Colorado.

5.      Ms. Richardson worked at Defendant's 13123 East 16th Avenue location in Aurora, Colorado.

6.      At all times in issue, Ms. Richardson resided and worked within the judicial district of this Court, and Defendant conducted business within the judicial district of this Court.

## II.    JURISDICTION AND VENUE

7.      The claims in issue, including all alleged unlawful employment actions, arose in the judicial district of this Court.

8.      Jurisdiction is proper under the Americans with Disabilities Act, 42 U.S.C. Section 12101, *et. seq*., 42 U.S.C. Section 12117(a), as amended by the Americans with Disabilities Amendments Act of 2008. [collectively referenced as the ADA].

9.      Under the ADA, Ms. Richardson was an employee of Defendant, an employer under the ADA.

10.     Also, this Court has jurisdiction under 28 U.S.C. Sections 1331, 1343 (a) (3) (4).

11.     Venue is proper in this Court under 28 U.S.C. Section 1391(b) (c) (1) (2), 42 U.S.C. Section 2000e-5(f) (3), and 42 U.S.C. Section 12117.

### III.     ADMINISTRATIVE PROCEDURES

12.     Before filing this action, Ms. Richardson timely, properly, and lawfully exhausted all required administrative prerequisites, procedures, and remedies.

13.     Ms. Richardson filed timely charges of disability discrimination and retaliation with the United States Equal Employment Opportunity Commission [EEOC], [EEOC Charge No. 541-2018-00325].

14.     On March 31, 2021, the EEOC issued and mailed a Notice of Right to Sue letter to Ms. Richardson.  This action is timely filed because it is filed within ninety days of Ms. Richardson's receipt of the Notice of Right to sue letter.

### IV.     GENERAL ALLEGATIONS

13.     Ms. Richardson is a certified School Counselor.

14.     Ms. Richardson has a Bachelor's degree in Psychology and a dual Master's degree in Counseling, with an emphasis in School Counseling.

15.     On or about January 15, 2008, Defendant hired Ms. Richardson as a Mental Health Counselor.

16.     Defendant terminated Ms. Richardson's employment on October 13, 2017.

17.     At all times in issue, Ms. Richardson's husband was disabled, she was the mother of four children, and the primary financial provider for her family.

18.     From January 15, 2008, through October 13, 2017, the date of her termination from employment, Ms. Richardson had an outstanding performance record and unblemished disciplinary record as Defendant's employee.

19.     In April 2017, Ms. Richardson displayed severe and adverse medical symptoms, culminating in her brain surgery in July 2017.

20.     In April 2017, Ms. Richardson began her medical leave because of her severe medical condition.

21.     Ms. Richardson, from April 2017 through the date of her termination, repeatedly requested a reasonable accommodation from Defendant in the form of leave.

22.     On July 19, 2017, Ms. Richardson's medical provider informed Defendant her surgery would be on July 24, 2017, and she needed 12 weeks of recovery time after her surgery before returning to work.

23.     Defendant did not dispute that Ms. Richardson needed 12 weeks after her surgery to recover.

24.     Ms. Richardson's surgery was delayed until July 31, 2017.

25.     On July 31, 2017, Ms. Richardson had brain surgery.

26.     Ms. Richardson's brain surgery was posterior fossa decompression surgery for Chiari I Malformation, "a rare congenital condition involving the brain's cerebellum."

27.     The surgery left Ms. Richardson with 20 staples in the back of her head and a titanium plate in her head.

28.     Ms. Richardson was 36 years of age at the time of her surgery.

29.     Following Ms. Richardson's surgery on July 31, 2017, she had multiple conversations with Defendant in which she discussed her correct surgery date, her medical condition. Consistent with her medical provider's position on leave, she again requested 12 weeks of leave to recover, to return to work on the first day of her schedule after the 12-weeks.

30.     Following Ms. Richardson's surgery, Defendant did not communicate to her it disputed her need for 12 weeks to recover.

31.     Defendant, while Ms. Richardson was on leave, informed her if she did not return to work before the end of October 2017, she would: (1) have to return all insurance payments she had paid before December 17, 2017, a sum of approximately $9000.00; and (2) be terminated and lose her insurance and benefits.

32.     Ms. Richardson was alarmed by Defendant's statements about her repayment of insurance and her termination. She viewed the statements as threatening, intimidating, and interfering with her continuing requests for a reasonable accommodation.

33.     On or about the first week of October 2017, Ms. Richardson discussed with the Defendant's Human Resource Department and one or more managers, her medical progress, and she again requested leave to have 12 weeks to recover and return to work the first day of her schedule after the 12 weeks.

34.     While on leave, Ms. Richardson requested leave until October 23, 2017.

35.     Defendant denied Ms. Richardson's request for leave until October 23, 2017.

36.     Defendant terminated Ms. Richardson's employment on October 13, 2017.

37.     Ms. Richardson was qualified to serve in her position as a qualified person with a disability under the ADA.

38.     Defendant hired a person outside the ADA protected class to fill her position.

39.     Defendant's Notice of Termination to Ms. Richardson, dated October 13, 2017, states she "was eligible for rehire when her health improved."

40.     Before Ms. Richardson began her medical leave, she applied for a promotion to Senior Mental Health Counselor.

41.     While Ms. Richardson was on leave, Defendant granted her a promotion to Senior Mental Health Counselor, which gave her a raise in pay.

42.     Defendant's termination of Ms. Richardson's employment on October 13, 2017, canceled her promotion.

43.     Ms. Richardson was qualified to perform the duties of the Senior Mental Health Counselor as a qualified person with a disability under the ADA.

44.     On October 17, 2017, Ms. Richardson submitted a message to Defendant, objecting to Defendant's treatment of her and her discharge.

45.     Defendant, on October 19, 2017, six days after it terminated Ms. Richardson, posted for hire as an open position the Mental Health Counselor position, the position she held on the date of her discharge.

46.     On October 26, 2017, Ms. Richardson submitted a message to Defendant, stating: (1) she had been talking with the EEOC; (2) it was not comforting that she was eligible for rehire, and (3) her objection that Defendant, a healthcare company, terminated her employment two months after her brain surgery leaving her with no insurance.

47.     On November 21, 2017, Ms. Richardson's medical provider informed Defendant that as of October 24, 2017, she could return to work with no restrictions.

48.     On November 30, 2017, Ms. Richardson applied for Mental Health Counselor, the position she previously held.

49.     Defendant informed her she had successfully submitted her application.

50.     Defendant did not interview Ms. Richardson for the open position.

51.     Ms. Richardson was qualified to serve in the open position.

52.     On December 1, 2017, Defendant informed Ms. Richardson it did not select her for the open position.

53.     Concerning Ms. Richardson's reapplication for employment to her prior position, Mental Health Counselor, after Defendant terminated her on October 13, 2017: (1) she was qualified to perform this position as a qualified person with a disability under the ADA; (2) her medical provider had cleared her to return to work with no restrictions, as of October 24, 2017, before Defendant denied her selection for the position; and (3) Defendant hired a person outside of the ADA protected class for the position.

54.     As a direct, foreseeable, and proximate result of Defendant's unlawful, intentional discrimination, retaliation, interference, intimidation, and threats complained of herein, Ms. Richardson suffered injuries and losses.

55.     Ms. Richardson's injuries and losses included but were not limited to emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, severe financial losses and consequences, the potential and/or actual loss of wages, earnings, income, benefits, diminution of earning capacity, actual and/or potential retirement benefits, loss of employment, and future pecuniary losses.

56.     In its discriminatory, retaliatory, interference, intimidation, and threats, Defendant acted willfully, with malice or reckless indifference to the federally protected rights of Ms. Richardson to be free from discrimination under the ADA.

## V.  CLAIMS FOR RELIEF

### FIRST CLAIM

### [Disability Discrimination]

57.     Richardson incorporates and restates all allegations previously asserted as though fully incorporated herein.

58.     The ADA makes it unlawful to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. Section 12112(a).

59.     The ADA prohibits Defendant from discriminating against Richardson: (1) regarding her compensation, terms, conditions, or privileges of employment, because of her disability and/or (2) by limiting, segregating, or classifying her in any way, which would deprive, or tend to deprive her of employment opportunities, or otherwise adversely affect her status as an employee, because of her disability.

60.     Richardson is a member of the ADA protected class.

61.     At all times at issue herein, Richardson was a "qualified individual" under

the ADA.

62.     On October 13, 2017, the date of Ms. Richardson's termination, and through December 1, 2017, the date she was not selected for hire in her reapplication, she was an individual who, with or without reasonable accommodation: (1) could perform the essential functions of the employment position she held with Defendant, the position in issue in her promotion, and the position for which she applied and was not selected by Defendant; and (2) possessed the requisite skill, experience, education, and other job-related requirements of the employment position she held with Defendant, the position in issue in her promotion, and the position for which she applied and was not selected by Defendant. 42 U.S.C. Section 12111(8).

63.     Ms. Richardson has a disability under the ADA. 42 U.S.C. Section 12101(1)(A).

64.     Ms. Richardson had brain surgery for Chiari I Malformation, a rare congenital condition involving the brain's cerebellum.

65.     Ms. Richardson has a physical or mental impairment that substantially limits one or more or her major life activities 42 U.S.C. Section 12101(2) (A).

66.     Ms. Richardson's medical condition substantially limited one or more of her life activities, including concentrating, performing manual tasks, seeing, thinking, communicating, and working. 42 U.S.C. Section 12102(2)(B).

67.     Immediately following Ms. Richardson's surgery, her cognitive function skills, memory, neck mobility, intellectual abilities and balance were impaired.

68.     Because of the surgery, Ms. Richardson has impairments. She has issues with her balance, right side weakness, headaches, memory loss, difficulty moving her head, and ringing in her ears.

69.     Defendant knew of Ms. Richardson's medical conditions, before and after her surgery.

70.     Defendant engaged in unlawful, direct, and intentional disability discrimination against Ms. Richardson because of her disability, and/or, her protected status as a qualified individual with a disability.

71.     Defendant's treatment of Ms. Richardson, including terminating her employment, canceling her promotion to Senior Mental Health Counselor, refusing to rehire her for the Mental Health Counselor position, was because of Richardson's disability and protected status under the ADA.

72.     Defendant discriminated against Ms. Richardson: (1) regarding her compensation, terms, conditions, or privileges of employment, because of her disability; and/or (2) by limiting, segregating, or classifying her in any way, which would deprive, or deprive her of employment opportunities, or otherwise adversely affect her status as an employee, because of her disability.

73.     Defendant's unlawful, intentional disability discrimination was created, perpetrated, and/or tolerated by the Defendant's officials and managers, all having specific knowledge, or reason to know, of Ms. Richardson's disability and the discriminatory actions set forth herein.

74.     Defendant's treatment of Ms. Richardson constitutes intentional, unlawful disability discrimination in violation of the ADA.

## SECOND CLAIM

### [Disability Discrimination - Regarded as Disabled]

75.     Ms. Richardson incorporates and restates all allegations previously asserted as though fully incorporated herein.

76.     The ADA's definition of disability and discrimination includes discrimination against a person based on the person being **regarded as** having a physical or mental impairment that substantially limits one or more major life activities of such individual. 42 U.S.C. Section 12101(2) (A).

77.     An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that she has been subjected to an action prohibited by the ADA because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

78.     Ms. Richardson meets the standard of being **regarded as** having a physical or mental impairment under the ADA.

79.     At all times in issue, Ms. Richardson was a "qualified individual" under the ADA.

80.     Ms. Richardson was an individual who, with or without reasonable accommodation, could perform the essential functions of the employment position she held with Defendant, the position in issue in her promotion, and the position for which she applied and was not selected by Defendant. 42 U.S.C. Section 12111(8).

81.    Defendant engaged in intentional, willful, and unlawful disability discrimination against Ms. Richardson in violation of the ADA, based on the Defendant regarding Ms. Richardson as having a physical or mental impairment that substantially limits one or more of his major life activities of such individual.

### THIRD CLAIM

### [Disability Discrimination - Record of Disability]

64.    Ms. Richardson incorporates and restates all allegations previously asserted as though fully incorporated herein.

65.    The ADA's definition of disability and discrimination includes discrimination against a person based on the person's **record of** having a physical or mental impairment that substantially limits one or more major life activities of such individual. 42 U.S.C. Section 12101(2) (A).

66.    As set forth, Ms. Richardson has a record of mental and physical impairments which substantially affect one or more of major life activities, including performing manual tasks, seeing, concentrating, thinking, communicating, and working. 42 U.S.C. Section 12102(2)(B).

67.    At issue herein, Richardson was a "qualified individual" under the ADA. Specifically, Ms. Richardson was as an individual who, with or without reasonable accommodation, could perform the essential functions of the employment positions she held with the Defendant. 42 U.S.C. Section 12111(8).

68.     Defendant engaged in intentional, willful, and unlawful disability discrimination against Ms. Richardson in violation of the ADA, including but not limited to discriminating against Richardson based on her record of a disability.

## FOURTH CLAIM

### [Failure to Accommodate]

82.     Ms. Richardson incorporates and restates all allegations asserted as though fully incorporated herein.

83.     Ms. Richardson has a viable claim for the denial of her requested accommodation under the ADA.

84.     The ADA forbids discrimination against a "qualified individual on the basis of disability." 42 U.S.C. Section 12112(a).

85.     Prohibited discrimination includes not making reasonable accommodations, 42 U.S.C Section 12112(b)(5)(A), such as part-time or modified work schedules. 29 C.F.R. Section 1630.2(o)(2)(ii).

86.     The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. Section 12102(1)(A).

87.     Ms. Richardson is a qualified individual with a disability.

88.     Defendant denied Ms. Richardson's requests for leave beyond October 13, 2017, including but not limited to her medical provider's request/position that she have 12 weeks after her surgery to recover, her requests for leave through 12 weeks after the date of her surgery, with her returning on the first day of her schedule after the 12 weeks, and her request for leave until October 23, 2017.

89.     Defendant cannot meet its burden to demonstrate that Ms. Richardson's requested accommodation would have imposed an undue hardship on Defendant. 42 U.S.C. Section 12112(b)(5)(A); 29 C.F.R. Section 1630.9

90.     At all times herein, Ms. Richardson was a qualified person with a disability under the ADA.

91.     Defendant knew of Ms. Richardson's disabilities.

92.     Defendant unreasonably failed to provide Ms. Richardson the reasonable accommodation.

93.     Defendant's refusal to provide the reasonable accommodations in issue to Ms. Richardson, constitutes intentional, willful, and unlawful disability discrimination in violation of the ADA.

## FIFTH CLAIM

### [Retaliation: Terms & Conditions and Discharge]

94.     Ms. Richardson incorporates and restates all allegations previously asserted as though fully contained herein

95.     Ms. Richardson asserts a claim of unlawful retaliation in violation of the ADA. 42 U.S.C. Section 12203(a).

96.     The ADA prohibits Defendant from unlawful retaliation and discrimination against Ms. Richardson because she engaged in activities protected by the ADA. 42 U.S.C. Section 12203(a)

97.     The ADA prohibits any person from retaliating against an individual who has opposed any act or practice made unlawful by [the ADA] or because such individual made

a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the ADA. 42 U.S.C. Section 12203(a).

98.    Ms. Richardson engaged in protected activities under the ADA by repeatedly requesting Defendant to provide her a reasonable accommodation in the form of leave.

99.    From April 2017 through July 31, 2017, the date of Ms. Richardson's surgery, she made many requests for a reasonable accommodation in the form of leave.

100.    On or about July 19, 2017, Ms. Richardson's provider informed Defendant that her surgery would be on July 24, 2017 [the initial date for surgery], and she needed 12 weeks of recovery time after her surgery before returning to work.

101.    Following Ms. Richardson's surgery on July 31, 2017, she had multiple conversations with Defendant in which she discussed her correct surgery date, her medical condition. Consistent with her medical provider's request/position on leave, she again requested 12 weeks of leave to recover, to return to work on the first day of her schedule after the 12-weeks.

102.    On or about the first week of October 2017, Ms. Richardson discussed with Defendant's Human Resource Department and one or more managers, her medical progress and she requested leave to have 12 weeks to recover, and return to work the first day of her schedule after the 12 weeks.

103.    While on leave, Ms. Richardson requested leave until October 23, 2017.

104.    Defendant knew of Ms. Richardson's protected ADA activities.  Defendant engaged in an intentional, calculated, and purposeful campaign of unlawful retaliation against Ms. Richardson.

105.    Defendant's intentional, unlawful retaliation was created, perpetrated, and/or tolerated by Defendant officials, managers, and employees.

106.    Defendant, contemporaneously with, and/or immediately after, Ms. Richardson's repeated, protected activities, took actions against her that a reasonable employee would have found materially adverse.

107.    Defendant retaliated against Ms. Richardson by subjecting her to a series of intentional, cumulative, and increasingly severe, materially adverse, and discriminatory actions.

108.    Defendant, while Ms. Richardson was on leave, informed her if she did not return to work before the end of October 2017, she would: (1) she would have to return all insurance payments she had paid before December 17, 2017, a sum of approximately $9000.00; and (2) she would be terminated and lose her insurance and benefits.

109.    Ms. Richardson was alarmed by Defendant's statements about her repayment of insurance and her termination.

110.    Ms. Richardson viewed Defendant's statements about her insurance and termination as a threat.

111.    Defendant denied Ms. Richardson's requests for a reasonable accommodation in the form of leave beyond October 13, 2017.

112.    Defendant terminated Ms. Richardson's employment on October 13, 2017.

113.    Defendant, contemporaneously with terminating Ms. Richardson's employment, canceled her promotion to Senior Mental Health Counselor and her right to greater pay

114.    A causal connection exists between Ms. Richardson's protected activities and the unlawful materially adverse employment actions taken by Defendant against Ms. Richardson.

115.    Defendant's treatment of Ms. Richardson, considered in its totality and in a cumulative manner, as stated in the above paragraphs of this claim and Complaint, constitutes unlawful, direct, intentional, materially adverse, retaliatory, and discriminatory actions prohibited by the ADA.

## SIXTH CLAIM

### [Retaliation: Failure to Hire]

116.    Ms. Richardson incorporates and restates all allegations previously asserted as though fully contained herein

117.    Ms. Richardson asserts a claim of unlawful retaliation in violation of the ADA. 42 U.S.C. Section 12203(a).

118.    The ADA prohibits Defendant from unlawful retaliation and discrimination against Ms. Richardson because she engaged in activities protected by the ADA. 42 U.S.C. Section 12203(a)

119.    Ms. Richardson engaged in protected activities under the ADA by repeatedly requesting Defendant to provide her a reasonable accommodation in the form

of leave, as set forth, and by submitting protected complaints opposing discrimination to Defendant.

120.    On October 17, 2017, Ms. Richardson submitted a message to Defendant, objecting to Defendant's treatment of her and her discharge.

121.    On October 26, 2017, Ms. Richardson submitted a message to Defendant, stating she had been talking with the EEOC; it was not comforting she was eligible for rehire; and objecting that Defendant, a healthcare company, terminated her employment two months after her brain surgery leaving her with no insurance.

122.    Defendant knew of Ms. Richardson's protected ADA activities.  Defendant engaged in an intentional, calculated, and purposeful campaign of unlawful retaliation against Ms. Richardson.

123.    Defendant's intentional, unlawful retaliation was created, perpetrated, and/or tolerated by Defendant officials, managers, and employees.

124.    Defendant, contemporaneously with, and/or immediately after, Ms. Richardson's repeated, protected activities, took actions against her that a reasonable employee would have found materially adverse.

125.    Defendant retaliated against Ms. Richardson by subjecting her to a series of intentional, cumulative, and increasingly severe, materially adverse, and discriminatory actions.

126.    Following Ms. Richardson's termination on October 13, 2017, and after the date on which her medical provider had cleared to return to work with no restrictions,

October 24, 2017, she applied for the Mental Health Counselor position, the position she held.

127.    Defendant informed her she had successfully submitted her application.

128.    Defendant did not interview Ms. Richardson for the open position.

129.    Ms. Richardson was qualified to serve in the open position.

130.    On December 1, 2017, Defendant informed Ms. Richardson it did not select her for the open position.

131.    A causal connection exists between Ms. Richardson's protected activities and the unlawful materially adverse employment actions taken by Defendant against Ms. Richardson.

132.    Defendant's treatment of Ms. Richardson, considered in its totality and in a cumulative manner, as asserted in the above paragraphs of this claim and Complaint, constitutes unlawful, direct, intentional, materially adverse, retaliatory, and discriminatory actions prohibited by the ADA.

## SEVENTH CLAIM

### [Interference, Intimidation, and Threats]

133.    Ms. Richardson incorporates and restates all allegations previously asserted as though fully contained herein

134.    The ADA prohibits any person from coercing, intimidating, threatening, or interfering with any individual in the exercise or enjoyment of, or on account of her having exercised or enjoyed any right granted or protected by the ADA. 42 U.S.C. Section 12203(b).

135.   Ms. Richardson asserts a claim of unlawful intimidation and threats against her because of or in interference with, her exercise or enjoyment of, or on account of her having exercised or enjoyed any right granted or protected by the ADA. 42 U.S.C. Section 12203(b).

136.   Ms. Richardson exercised her rights under the ADA by requesting and receiving a reasonable accommodation in the form of leave, and requesting reasonable accommodations in the form of leave which were not granted by Defendant.

137.   At all times, Defendant knew Ms. Richardson's exercise of rights under the ADA.

138.   Defendant engaged in intimidation, threats, and/or interference with Ms. Richardson's exercise of rights or enjoyment of rights under the ADA.

139.   Defendant denied Ms. Richardson's previously discussed requests for leave to return on any date after October 13, 2017.

140.   Defendant, while Ms. Richardson was on leave, informed her if she did not return to work before the end of October 2017, she would: (1) have to return all insurance payments she had paid before December 17, 2017, a sum of approximately $9000.00; and (2) be terminated and lose her insurance and benefits.

141.   Ms. Richardson was alarmed by Defendant's statements about her repayment of insurance and her termination. She viewed the statements as threatening, intimidating, and interfering with her continuing requests for a reasonable accommodation.

142.   Defendant terminated Ms. Richardson's employment on October 13, 2017.

143.   Defendant, contemporaneously with terminating Ms. Richardson's employment, canceled her promotion to Senior Mental Health Counselor and her right to increased pay.

144.   Defendant's intentional, unlawful, coercion, intimidation, threats, and /or interference was created, perpetrated, and/or tolerated by Defendant officials, managers, and employees.

145.   Defendant's treatment of Ms. Richardson, considered in its totality and in a cumulative manner, as stated in the above paragraphs of this claim and Complaint, constitutes unlawful, direct, intentional, intimidation, threats, and/or interference with Ms. Richardson's exercise of rights or enjoyment of rights under the ADA.

## VI.  <u>REQUEST FOR RELIEF</u>

WHEREFORE, the Defendant's unlawful conduct directly caused Kristie Richardson to suffer injuries, damages, and losses;

FURTHER, Kristie Richardson respectfully requests this Court to enter judgment in her favor and against Defendant on the claims in issue and award the following relief for Kristie Richardson's claims for relief, under the ADA, and all other claims:

(a)   To enter a judgment for Ms. Richardson and against Defendant, finding Defendant's actions constitute unlawful intentional discrimination in violation of the ADA.

(b)   To enter a judgment for Ms. Richardson and against Defendant, finding Defendant's actions constitute unlawful intentional retaliation in violation of the ADA.

(c)     To enter a judgment for Ms. Richardson and against Defendant, finding Defendant's actions constitute unlawful intentional interference, intimidation, and threats, in violation of the ADA.

(d)     To award Ms. Richardson damages for back pay, front pay, restored benefits, accommodations, actual monetary damages, loss of wages, salary, retirement contributions, all loss of income, and all loss of monetary damages to which she is entitled.

(e)     To award Ms. Richardson compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, future pecuniary losses, and other non-pecuniary losses, and all loss of compensatory damages to which she is entitled.

(f)     To award Ms. Richardson punitive damages.

(g)     To award Ms. Richardson attorney fees and costs.

(h)     To award Ms. Richardson pre-judgment and post-judgment interest at the appropriate rate provided by law.

(i)     To direct Defendant to take such affirmative relief steps as are necessary to ensure that the effects of Defendant's unlawful employment practices are eliminated and do not continue to affect Ms. Richardson's employment opportunities.

(j)     Order Defendant to reinstate Ms. Richardson to employment.

(k)     To award Richardson front pay, and;

(l)      To award Richardson all other legal and equitable relief, to which

Richardson is entitled under any law this Court deems just, equitable, and proper.

## VII. <u>JURY TRIAL REQUEST</u>

Under finding Defendant's. 38 (a)(b)(c), and 42 U.S.C. Section 1981a (c) (1), and

all laws providing a right to trial by jury, Ms. Richardson requests a jury trial of all claims

and issues.

Respectfully submitted this June 25, 2021, by:

Murray Law, LLC

<u>/s/ Steven Murray</u>
Steven Murray
Murray Law, LLC
1888 N. Sherman St., Ste 200
Denver, CO 80203
Phone: 303-396-9952
E-mail: steven@smurraylaw.com

Mitchiner Law, LLC

<u>/s/ Thomas H. Mitchiner</u>
Thomas H. Mitchiner
Mitchiner Law, LLC
1888 N. Sherman St., Ste 200
Denver, CO 80203
Phone: 720-538-0371
E-mail: tmitchiner@mitchinerlawllc.com

*Attorneys for Plaintiff Kristie Richardson*

Address of Plaintiff.
17856 W Summer Haven Drive, Goodyear, AZ 85338